612 So.2d 767 (1992)
Rufus CRAYTON
v.
SENTRY INSURANCE COMPANY, et al.
No. 91 CA 1305.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
Rehearing Denied February 5, 1993.
Writ Denied March 19, 1993.
*768 Byard Edwards, Ponchatoula, for plaintiff/third-appellant.
Rodney Cashe, Hammond, for Carl O. Speed second-appellant.
Mickey S. deLaup, Metairie, for defendant/first-appellant Sentry Ins. Co.
Before WATKINS, CRAIN and GONZALES, JJ.
*769 CRAIN, Judge.
This is an action by insured homeowners, Rufus and Margaret Crayton, against insurance agent Carl Speed and Sentry Insurance Company (Sentry). Speed originally procured a builder's risk policy to insure the Craytons' home during construction. The policy was written by Sentry Insurance Company. When the residence was approximately 80% complete Crayton and his family moved in and occupied the residence while Mr. Crayton completed much of the finish work himself. Speed inspected the premises during this period and agreed to convert the policy from a builder's risk to a homeowner's policy. After this inspection, but prior to the time that Crayton received the new policy, the home and its contents were destroyed by fire on May 18, 1980.
Sentry denied payment on the policy on the grounds that the policy was voided due to the increased risk created by the presence and storage on the premises of numerous painting supplies. On August 29, 1980, Sentry paid the sum of $71,143.98 to the named mortgagee, First Guaranty Bank. Crayton instituted an action against Sentry in the Twenty-First Judicial District Court in Tangipahoa Parish. Sentry reconvened seeking reimbursement for the sum paid to First Guaranty Bank and had the case transferred to the United States District Court, Eastern District of Louisiana (Civil Action No. 81-276). The action was tried in May, 1982. In answer to special interrogatories the jury found defendants did not prove the defenses of fraud or arson. It found defendants proved the defense of increased physical hazard. Judgment was entered in accordance with the verdict in favor of Sentry and against the Craytons for the sum of $69,901.86 plus interest. That judgment remains outstanding.
On July 6, 1984, this action was instituted against Sentry and Speed in the Twenty-First Judicial District Court in Tangipahoa Parish seeking damages for breach of contract. Defendants filed an "Exception of Res Judicata, Collateral Estoppel and Vagueness." The trial court sustained the objection of res judicata and dismissed plaintiffs' suit. Plaintiffs appealed to this court wherein by unpublished per curiam opinion (Docket Number CA 880347) we reversed the judgment of the trial court and held that the former and the present actions lacked identity of cause, thus the present action was not barred by res judicata. We remanded for further proceedings.
Sentry subsequently filed exceptions raising the objections of prescription, vagueness and no cause of action which the trial court denied. We declined to exercise our supervisory jurisdiction regarding Sentry's subsequent writ applications on these matters.
After trial on the merits, judgment was rendered in favor of Crayton and against Sentry and Speed, jointly and in solido in the sum of $165,000, with legal interest running from January 8, 1981, until paid.
From this judgment defendants appeal alleging as error:
(1) the trial court's determination that an insurance agent, as distinguished from a broker, owes a fiduciary duty to the insured;
(2) the trial court's determination that Speed breached a fiduciary duty owed to Crayton;
(3) the trial court's judgment was based on the insurance contract and is thus barred by res judicata;
(4) the trial court's failure to maintain the exception of prescription;
(5) the sum awarded for the residence exceeds the policy limits;
(6) the sum awarded for loss of contents exceeds the policy limits;
(7) the award for loss of contents was based on plaintiff's uncorroborated testimony;
(8) the award of interest from the date of loss rather than the date of judicial demand;
(9) the trial court's failure to grant or allow Sentry a credit or set off for the judgment rendered in favor of Sentry in the federal court action.
*770 Crayton answered the appeal and alleged as error the trial court's failure to award nonpecuniary damages.

DUTY OF INSURANCE AGENT
In the first and second assignments of error defendants contend that Speed was the exclusive agent of Sentry, thus Speed owed a fiduciary duty only to Sentry, not to the insured; and if such a duty was owed Speed's conduct did not constitute a breach of that duty. Defendants argue that Speed owed no duty to the Craytons to inform them that the presence of the painting supplies created a hazard which would void the policy.
The Insurance Code distinguishes an insurance agent from an insurance broker. An "insurance agent" as defined in La.R.S. 22:1161:
an individual who is a resident of this state, or whose principal office is in this state, or a partnership the members of which are residents of this state or have their principal office in this state, or a corporation having by its charter the power to act as an insurance agent and whose principal office is in this state, and whose officers and principal stockholders are residents of this state, authorized in writing by any insurer lawfully authorized to transact business in this state, to act as its representative with authority to solicit, negotiate and effect contracts of insurance in its behalf, who or which has an office in this state in which is kept a record of the contracts of insurance signed, countersigned or issued by them, and whose premium writings represented by the premiums on contracts of insurance signed, countersigned or issued by them for the general public exceed (except in the case of first-time applicants) those on insurance signed, countersigned or issued by them covering their own property or risks or insurable interests and, in the case of individual agents, the property or risks of their relatives or employer.
An "insurance broker" is defined in La. R.S. 22:1162 (prior to its amendment by La.Acts 1988, No. 352, Sec. 1) to be:
an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent.
La.R.S. 22:1161 and 1162 are contained in Part XXV of the Insurance Code (La.R.S. 22:1161-1183) which is entitled: "Qualification and License Requirements for Brokers and Agents Other Than Life." These statutes are regulatory in nature and are used to determine the type of license, and the qualifications and licensing requirements for brokers and agents. They are not intended to, nor do they, change the general laws of agency; neither do they prevent courts from finding an agency relationship existing outside the scope of the statutes. Tiner v. Aetna Life Insurance Co., 291 So.2d 774 (La.1974).
The primary distinction in the determination that a person procured insurance as the agent of the insurer rather than as a broker is that the acts of the agent of the insurer are imputable to the insurer. A broker is the agent of the insured for the purpose of procuring the policy and the agent of the insurer in receiving and transmitting the premium. Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3d Cir.1972), affirmed, 281 So.2d 728 (La.1973).
It is undisputed that during the time in question, Speed was the exclusive insurance agent of Sentry pursuant to La.R.S. 22:1161. He solicited business and sold insurance policies exclusively for Sentry. Consequently, his acts were binding on Sentry.
On the other hand, even though Speed was the agent of Sentry and his acts bound Sentry, he also owed a duty to the Craytons. Our Supreme Court has stated that:
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable *771 diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
Karam v. St. Paul, 281 So.2d 728, 730-731 (La.1973).
Insurance agents and brokers owe the same duty to a client for whom the agents or brokers have agreed to procure insurance. See, e.g. Durham v. McFarland, Gay and Clay, Inc., 527 So.2d 403 (La.App. 4th Cir.1988) (duty owed by brokers); McCartney v. State Farm Insurance Co., 567 So.2d 1168 (La.App. 3d Cir.), writ not considered, 569 So.2d 974 (La. 1990) (duty owed by exclusive agent). That duty owed by agents and brokers includes informing the insured upon inspection of the premises of conditions which would constitute an "increased hazard" which would thereby void the policy. Mongeau v. Liverpool & London & Globe Ins. Co. of Liverpool, Eng., 128 La. 654, 55 So. 6 (1911). If a duty is imposed by the relationship of the parties and the duty is breached by an act or omission of a party then that party is liable for such acts of omission or commission. Mauroner v. Massachusetts Indemnity and Life Insurance Co., 520 So.2d 451 (La.App. 5th Cir.), writ denied, 524 So.2d 518 (La.1988).
It is undisputed that Speed procured builder's risk insurance for the Craytons and agreed to convert the policy to a homeowner's policy. In written reasons for judgment the trial court found that Speed was Sentry's exclusive agent; the homeowner's policy was issued prior to completion of the construction and finish work; Speed knew that Crayton was a house painter and was painting and finishing the home prior to its completion; Speed had inspected the home during this stage of completion; he did not advise Crayton that storing painting supplies in the home would violate or void the policy; and that the policy was not delivered to Crayton until after the fire, thus Crayton had no knowledge that the storage of painting supplies constituted a hazardous condition which would void the policy. The trial court concluded that Speed breached the fiduciary and contractual duty which he owed to Crayton and that Speed's actions led Crayton to believe that he was properly insured.
After careful review of the record we conclude that Speed owed a duty to the Craytons and find no manifest error in the trial court's factual conclusion that such duty was breached by Speed.

RES JUDICATA
In the third assignment of error appellants contend that this action is barred by res judicata because in written reasons for judgment the trial court found this action to be based on the insurance contract which was the basis or cause of the prior suit. Actually the trial court's written reasons for judgment refer to the duty owed to Crayton by Speed acting in the capacity of an insurance agent.
We have previously held that this action was not barred by res judicata because this action is based on the agreement between the insurance agent and the client (insured) for the procurement of adequate homeowners insurance. It is not based on the insurance contract. This assignment is without merit.

PRESCRIPTION
Defendants contend that Sentry was Speed's employer and as such is responsible for Speed's actions under the theory of respondeat superior which is possible only under La.C.C. art. 2320 (when the employee's actions constitute tortious conduct). The applicable prescriptive period for actions pursuant to La.C.C. art. 2320 is that for delictual actions, not contract. Thus, this action has not prescribed.
The jurisprudence has established that an action by an insured or client against an insurance agent for breach of contract, whether or not such breach involves delictual conduct, is subject to a liberative prescription of ten years (La.C.C. art. 3499) rather than the liberative prescription for delictual actions pursuant to La.C.C. art. 3492, provided that contractual privity has been established. Roger v. Dufrene, 602 *772 So.2d 323 (La.App. 4th Cir.1992), writ granted, 607 So.2d 547 (La.1992); Ray v. Mid South Underwriters, Inc., 526 So.2d 1297 (La.App. 3d Cir.1988). The contractual relationship between Crayton and Speed has been clearly established, thus, the action is subject to a 10 year prescriptive period. This assignment is without merit.

NON-PECUNIARY DAMAGES
The Craytons allege that the trial court erred in refusing to award nonpecuniary damages for breach of the fiduciary duty owed by Speed to the Craytons.
We need not determine whether the breach by an insurance agent of a duty owed to a client (insured) gives rise to nonpecuniary damages because plaintiffs failed to clearly prove substantial emotional distress and inconvenience. This assignment is without merit.

QUANTUM
In the fifth and sixth assignments of error defendants contend that the trial court erred in awarding $110,000 for loss of the dwelling and $55,000 for loss of contents in that the policy limits were $100,000 on the dwelling; and $50,000 on contents. They additionally argue that the plaintiffs did not adequately prove the value of the lost personal property.
The insurance policy was introduced into evidence and provided the following policy limits: $100,000 for the dwelling; $10,000 for appurtenant structures; and $50,000 for unscheduled personal property. The dwelling coverage included coverage for "materials and supplies located on the premises or adjacent thereto, intended for use in construction, alteration or repair of such dwelling." Coverage B for appurtenant structures covered structures "in appertaining to the premises and located thereto," and also covered materials and supplies on the premises or adjacent thereto, intended for use in construction of such structure. The policy contains a Homeowners Program-Basic Extension of Coverage Endorsement which provides "that if at the time of loss there are no wholly detached appurtenant private structures contained on the premises described, the Limit of Liability shown for Coverage B shall be added to the Limit of Liability shown, for Coverage A and the sum of the two shall be the Company's Limit of Liability under Coverage A."
The trial court specifically found that plaintiffs were entitled to damages equal to those which would have been recoverable under the policy. It additionally found that the value of the dwelling was in excess of $110,000. There was apparently no appurtenant structure on the premises thus the Homeowner's Program-Basic Extension of Coverage Endorsement applies thereby increasing the limits of liability under Coverage A to $110,000.
Defendants contend that plaintiffs did not prove the value of the unscheduled personal property which was allegedly lost or destroyed.
The insured must prove the extent of his loss by a preponderance of the evidence. LaHaye v. Allstate Insurance Co., 570 So.2d 460 (La.App. 3d Cir.1990), writ denied, 575 So.2d 391 (La.1991). Where a home and its contents are completely destroyed the insured is not required to secure original receipts or vouchers from the stores where the items were purchased. Id. 570 So.2d at 466. To so require would place an almost impossible burden on the claimant and prevent recovery by most claimants under any insurance policy. Id. at 466.
In written reasons for judgment the trial court specifically found that plaintiffs presented ample evidence that the value of the unscheduled personal property exceeded the policy limits. A review of the record reveals that Mr. Crayton had a checkered and questionable employment and financial history. However, the record contains an inventory of the lost items as well as testimony by Mr. Crayton regarding how the value of the items was determined, e.g. items such as appliances and furniture had been recently purchased. This evidence apparently satisfied the trial court that the value of the unscheduled personal property exceeded the $50,000 policy limits. We find no manifest error in this determination. However, the trial court's award exceeded the policy limits by $5,000. Thus, we reduce this award to $50,000.

*773 INTEREST
In the eighth assignment of error defendants contend that the trial court erred in awarding interest from the date of judicial demand in the prior suit (1981). They contend that at most, interest should run from the date of judicial demand of this action (1984). Alternatively they argue that an action for breach of a fiduciary duty is quasi-contractual in nature and as such, interest should run from the date of judgment.
Prejudgment interest represents an award to the plaintiff for a defendant's use of the money found to be owed the plaintiff. It is a necessary component to the plaintiff's full compensation and is an extension of the compensatory damages which make a plaintiff whole. Trans-Global Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443 (La.1991) (wherein a customer who prevailed in an action against his bank for breach of contract and a breach of its fiduciary duty was entitled to interest from date of judicial demand, not merely from date of judgment). Likewise, in the instant case interest should run from date of judicial demand. Furthermore, interest should be awarded from date of judicial demand in this action rather than date of judicial demand in the prior action, because the damages were not ascertainable earlier. Sentry paid $71,143.98 to the mortgagee, Sentry procured a judgment against the Craytons for $69,901.86 plus interest, and we are rendering a judgment against Speed and Sentry for $160,000 plus interest. See Trans-Global Alloy v. First National Bank of Jefferson Parish, supra.

SET-OFF
In the ninth assignment of error defendants contend that the trial court should have granted to Sentry a set-off for the sum of the judgment in the federal suit which judgment remained outstanding. The trial court refused to grant the set-off, reasoning that the judgment was rendered in a separate proceeding in federal court and was "still outstanding and unpaid, final and collectible through other means."
Prior to its amendment and reenactment by La. Acts 1984, No. 331, Sec. 1, La.C.C. art. 2207, provided that when two persons are indebted to each other set-off or compensation takes place extinguishing both debts. The judgment in the federal suit was rendered in favor of Sentry and against the Craytons. Speed was apparently not a party to the federal action. Speed and Sentry are solidarily liable in this action and judgment was rendered against both. Thus, a set-off is not appropriate under the facts and circumstances of this case. Sentry has other means available for enforcing the prior outstanding judgment.
Accordingly, the judgment of the trial court is amended in part and affirmed in part. Costs are assessed against appellants.
AMENDED AND AFFIRMED.