711 So.2d 765 (1998)
Greg GILBERT, Plaintiff-Appellant,
v.
B.D.O.W.S., INC., et al., Defendants-Appellees.
No. 30439-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*766 Theus, Grisham, Davis & Leigh, L.L.P. by J. Michael Hart, Monroe, for Plaintiff-Appellant.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., and J. Todd Benon, Shreveport, for Defendants-Appellees Ed Seymour, Jr., Ed Seymour, III, and Aetna Casualty & Surety Co.
Crawford & Anzelmo by Brian E. Crawford and Neal L. Johnson, Jr., Monroe, for Defendant-Appellee Ohio Casualty Insurance Company.
Hudson, Potts & Bernstein, L.L.P. by Brady D. King, II, Monroe, for Defendants-Appellees Dr. James Barron and State Farm Fire & Casualty Co.
Before GASKINS, CARAWAY and PEATROSS, JJ.
PEATROSS, Judge.
In this personal injury action, Greg Gilbert ("Plaintiff") appeals the judgment of the trial court which granted partial summary judgment in favor of Defendants Ohio Casualty Company ("Ohio Casualty"), State Farm Fire and Casualty Company ("State Farm") and Aetna Casualty and Surety Company ("Aetna") and which granted summary judgment in favor of Defendants James Barron ("Barron") and Ed Seymour, Jr. and Ed Seymour, III ("Seymours") Plaintiff assigns as error: 1) the trial court's finding that there were no genuine issues of material fact and, that as a matter of law, Barron and the Seymours owed no duty to Plaintiff; 2) the trial court's finding that Barron and the Seymours did not have garde of the swimming pool; 3) the trial court's finding that, as a matter of law, Barron and the Seymours were not vicariously liable for the acts of Thomas Lawson ("Lawson"); 4) the trial court's finding that Lawson was not an insured under the State Farm policy issued to Barron and the Aetna policy issued to the Seymours; 5) the trial court's finding that the policies issued by State Farm and Aetna did not provide medical expenses and benefits to Plaintiff; and 6) the trial court's finding that there were no genuine issues of material fact and that, as a matter of law, Ohio Casualty's inspection of the swimming pool did not create any duty owed by Ohio Casualty to Plaintiff. For the following reasons, we affirm the judgment of the trial court.

FACTS
On the night of July 8, 1992, Plaintiff was visiting Tracy Gandy, a college friend, at Gandy's apartment in the Oliver North apartment complex in Monroe. Plaintiff, along with Gandy and other friends, went to swim in the pool located on the grounds of the complex. Plaintiff dove into the swimming *767 pool and sustained injuries rendering him a quadriplegic. The swimming pool and apartment building where Gandy lived were owned by Defendants Sherman and Velynda Shaw.
Lawson, Barron and the Seymours each owned apartment buildings at the Oliver North complex. The properties owned by Lawson, Barron and the Seymours did not have a swimming pool. So that their tenants would have access to the Shaws' swimming pool, Lawson, Barron and the Seymours paid the Shaws an annual per apartment assessment fee. These funds were deposited by the Shaws into a separate account ("the Oliver North Clubhouse and Pool Account") and were used by the Shaws to pay pool expenses.
In addition to owning an apartment building in the Oliver North complex, Lawson was also employed by the Shaws as their apartment manager. Ms. Shaw also hired Lawson to oversee, clean and maintain the pool. For his pool services, Lawson was paid on an hourly basis by Ms. Shaw out of the Oliver North Clubhouse and Pool Account. Only Ms. Shaw and Lawson possessed keys to the two padlocks and gates surrounding the perimeter of the pool.
On July 1, 1993, Plaintiff filed suit against the Shaws alleging that they were liable to him, under theories of negligence and strict liability, for damages sustained by him. Among other allegations, Plaintiff alleged that the Shaws were guilty of fault in failing to have "no diving" signs, failing to have proper depth markers, failing to have proper lighting conditions and failing to delineate the shallow end of the pool from the deep end. Plaintiff alleged that the pool presented an unreasonable risk of harm to the tenants and their guests who used the pool.
On March 21, 1995, Plaintiff filed a Supplemental and Amending Petition joining as defendants Lawson, Barron, State Farm, the Seymours, Aetna and Ohio Casualty. Plaintiff alleged that Lawson, the Seymours and Barron shared with the Shaws the cost, upkeep, custodial authority, garde and use of the pool and that they were jointly liable with the Shaws for damages sustained by Plaintiff due to the acts of negligence described in the original petition. He further alleged that Ohio Casualty was individually liable due to its negligent inspection of the pool prior to his accident.
Plaintiff also alleged that State Farm issued a business general liability policy to Barron that provided liability coverage to Barron for any liability he had to Plaintiff. Additionally, Plaintiff alleged that Aetna issued business general liability policies to the Seymours that provided liability coverage to the Seymours for any liability they may have to Plaintiff.
On May 1, 1996, Plaintiff filed a Second Supplemental Petition, alleging that because Lawson was the agent, manager or employee of the Shaws, the Seymours and Barron, they were vicariously liable for Lawson's acts of negligence. Plaintiff further alleged that Lawson was an omnibus insured under Defendants' business liability policies.
On June 14, 1996, Plaintiff filed a Third Amending Petition, alleging that the general liability policies issued by each of the defendant insurers provided medical benefits coverage to Plaintiff for his medical expenses.
Plaintiff filed a Fourth Amending Petition on August 2, 1996, alleging the acts of fault committed by Lawson were performed in his dual capacity as apartment owner and pool manager for the pool that was allegedly leased or used in common by Barron, Lawson and the Seymours.[1]
Ohio Casualty moved for partial summary judgment seeking dismissal of Plaintiff's claims against it in its individual capacity for alleged acts of fault. Barron and State Farm moved for summary judgment seeking dismissal of Plaintiff's suit, as did the Seymours and Aetna Casualty. In support of their motions, Defendants attached numerous depositions and copies of the insurance policies.
Subsequent to hearings held on July 11, 1996, and August 21, 1996, the trial court granted Ohio Casualty's motion for partial summary judgment and the motions for summary judgment filed by Barron, State Farm, *768 the Seymours and Aetna.[2] Assigning six specifications of error, Plaintiff appeals from the adverse judgments.

DISCUSSION
Pretermitting a determination of whether all of these judgments are appealable final judgments properly before us in light of La. C.C.P. art.1915 (as it existed prior to the 1997 amendment) and Douglass v. Alton Ochsner Medical Foundation, 96-2825 (La.6/13/97), 695 So.2d 953, we choose to exercise our broad supervisory powers and review the granting of summary judgment as to all parties involved. Judicial efficiency and fundamental fairness to the litigants dictate that we utilize these supervisory powers to consider this case at this time. North Central Utilities, Inc. v. East Columbia Water Dist., 516 So.2d 1268 (La.App. 2d Cir. 1987).
Appellate courts review summary judgment de novo under the same criteria that govern the district court's considerations regarding the appropriateness of summary judgment. Bockman v. Caraway, 29,436 (La.App.2d Cir. 4/2/95), 691 So.2d 815; Gleason v. State Farm, 27,297 (La.App.2d Cir. 8/23/95), 660 So.2d 137, writ denied, 95-2358 (La.12/15/95), 664 So.2d 454.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477. The summary judgment procedure is now favored and "shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).
The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Leckie v. Auger Timber Company, Inc., 30,103 (La.App. 2nd Cir. 1/21/98), 707 So.2d 459. The burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). When a motion is made and supported as required under art. 966, however, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art.967.

Ohio Casualty's Partial Summary Judgment
Plaintiff asserted a claim against Ohio Casualty, under a negligence theory, alleging that Ohio Casualty owed a duty to Plaintiff which was voluntarily assumed by Ohio Casualty by inspecting the pool prior to the accident. Ohio Casualty claims that it never voluntarily undertook any duty to protect Plaintiff or any member of the general public from alleged dangers of the pool.
The standard negligence analysis our courts employ in determining whether to impose liability under La. C.C. art. 2315 is the duty/risk analysis. For liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5)actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), *769 646 So.2d 318; Powell v. Brookshire's Grocery Co., Inc., 30,047 (La.App. 2d Cir. 12/10/97), 705 So.2d 286.
The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Mathieu, supra. Lovett v. Wal-Mart Stores, Inc., 29,067 (La.App.2d Cir. 1/22/97), 687 So.2d 681. The duty issue, therefore, may be appropriate for resolution by summary judgment. La. C.C.P. art. 966(B).
Prior to the accident, Wes Blethen, an underwriter for Ohio Casualty, reviewed the Shaws' business liability policy issued by Ohio Casualty in order to "re-underwrite" the policy. Blethen hired Ben Mobley of Equifax to inspect the Shaws' property for compliance with the underwriting guidelines of Ohio Casualty. Mobley's report recommended that pool rules should be posted and that the pool depths should be marked on the sides of the pool.
Blethen testified in his deposition that because of the lack of pool rules and the depth markers, the Shaws' pool did not meet Ohio Casualty's underwriting requirements. Blethen sent two written requests to the Shaws that the pool rules be posted and that the pool depth be marked on the side of the pool. Blethen was subsequently notified by the Shaws' insurance agent, Mike Sweeney, that the pool was in compliance with Ohio Casualty's requests.
Plaintiff's brief to this court alleges:
Prior to performing an inspection of the Shaw pool and requiring the Shaws to comply with its recommendations, Ohio Casualty did not owe any duty to Plaintiff to inspect the Shaw pool for hazards or to make proper recommendations to the Shaws relating to pool safety. However, when Ohio Casualty voluntarily undertook the duty of inspecting the Shaw pool for safety hazards and voluntarily undertook the duty of requiring mandatory compliance by the Shaws, Ohio Casualty assumed the duty to use reasonable care in performing a safety inspection of the pool and use reasonable care in making pool safety recommendations to the Shaws. (Emphasis in original.)
Plaintiff later makes the statement that, "The inspection of the pool for hazards and the providing of recommendations to the Shaws was for the protection of persons using the pool such as [Plaintiff]." The facts do not support this statement and for this reason, summary judgment was proper on this issue.
The two requests sent to the Shaws by Blethen contained the following:
Due to your application for insurance, our company has surveyed your operations. Please understand our observations are for the exclusive purpose of making an underwriting determination. Our limited visit or visits are not intended to be as thorough as the day to day observations of you, your supervisory and executive personnel or the safety inspections provided by safety engineering services or governmental agencies.
* * * * * *
These recommendations do not constitute a safety inspection. They do not relieve you of your responsibility to provide a safe place of employment or a safe business operation.
In addition, the policy issued by Ohio Casualty to the Shaws provided:
Any inspections, surveys, reports or recommendations relate to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.
* * * * * *
This condition applied not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
Plaintiff contends that Crayton v. Sentry Insurance Company, 612 So.2d 767 (La.App. 1st Cir.1992), establishes that Ohio Casualty assumed a duty owed to him by its inspection of the pool. We do not agree with Plaintiff's reading of Crayton. The first circuit merely recognized that the insurer owes a duty to the insured and does not discuss the independent liability of the insurer to third parties.
*770 It is clear from the evidence presented that Ohio Casualty, through Equifax, undertook the inspection of the swimming pool to determine if the pool met Ohio Casualty's underwriting requirements. Plaintiff presented no evidence establishing a duty owed by Ohio Casualty to him. Summary judgment on this claim was proper.

Duty of Barron and the Seymours
Plaintiff asserts that because Barron and the Seymours allegedly shared in the expenses of maintaining the pool, they owed him a duty to protect against any hazards related to the pool. Plaintiff contends in his brief to this court that genuine issues of material fact exist, but Plaintiff fails to state or discuss any such issues.
It is not contested that the Shaws own the swimming pool. Velynda Shaw stated in her deposition that at the beginning of the year she would determine the expense of operating the swimming pool and assess Barron and the Seymours a per apartment fee. Velynda Shaw's affidavit states that Barron and the Seymours paid money to her so that their tenants could make use of the Shaws' swimming pool. Her affidavit further states that she made payments out of these funds for maintenance/repairs and cleaning of the pool and for pool supplies. Velynda Shaw stated in her deposition that she did not, as a matter of routine, send Barron or the Seymours statements showing how the funds were paid, and she never met with Barron and the Seymours to discuss pool safety.
Additionally, check stubs from the pool account show that the Shaws paid not only pool expenses and Lawson's salary for maintaining the pool, but they also paid Lawson from this account for his mowing their property. No accounting of how funds were spent was introduced into evidence to show that money paid by Barron and the Seymours was not used to pay for Lawson's mowing services.
Plaintiff cites Thibodeau v. Morgan City, 619 So.2d 595 (La.App. 1st Cir.1993), in support of his claim that Barron and the Seymours owed him a duty. Thibodeau, however, is distinguishable from the present case. In Thibodeau, plaintiff was rendered a quadriplegic when he dove into a shallow lake owned by the state and leased by the city. Plaintiff sued the state and the city. The court held that the city, which was the lessee rather than the owner of the lake, owed a duty to the plaintiff to warn of the hazards of diving into the shallow lake. Plaintiff contends that Barron and the Seymours, who did not own the pool, owed a duty to him. In Thibodeau, however, the city leased the lake from the state. We do not have such a relationship in the present case.
From the facts established, Barron and the Seymours owed no duty to Plaintiff as a result of their paying a yearly per apartment assessment so that their tenants could have access to the Shaws' swimming pool. The trial judge properly concluded that:
The fact that an apartment owner pays a fee to the owner of another apartment complex[,] wherein there is a pool[,] in order that tenants and guests of the paying apartment owner could utilize the pool, confers no duty ... upon the payor apartment owner to insure the safety of the pool.

Garde of the swimming pool
Plaintiff contends that Barron and the Seymours are strictly liable for his injuries under La. C.C. art. 2317, which states in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody.
To recover under article 2317, Plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299; McCarthy v. First Financial Ins., 30,015 (La.App.2d Cir. 12/10/97), 705 So.2d 1137.
Article 2317 imposes strict liability on the person maintaining custody (garde) of the defective thing; this rule is premised on one's legal responsibility to keep his thing in good condition to avoid harming others. Loescher v. Parr, 324 So.2d 441 (La.1975); DeRouen v. Audirsch, 25,847 (La.App.2d Cir. 6/28/94), 639 So.2d 476. The Louisiana Supreme *771 Court has determined that the things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991); King v. Louviere, 543 So.2d 1327 (La.1989). We must therefore determine (1) what type of direction and control Barron and the Seymours maintained over the swimming pool and (2) whether they received any benefit from it. DeRouen, supra.
While Barron and the Seymours may have gotten some benefit from their tenants being able to use the Shaws' swimming pool, we conclude the evidence shows that neither Barron nor the Seymours exercised any control over the swimming pool. The evidence shows that Lawson, whom the Shaws originally hired to manage their apartment building, was also hired by the Shaws to clean and maintain their grounds and swimming pool. He was in charge of enforcing pool rules, such as the 9:00 p.m. curfew and no alcohol in the pool area, which were created by Velynda Shaw. In response to a question as to whom he met with to discuss pool safety and rules, Lawson stated, "There was only one person and that was Mrs. Shaw. She made the rules and I enforced them."
Velynda Shaw testified in her deposition that she maintained the account into which the fees paid by Barron and the Seymours were deposited. She also stated that she maintained a file on the swimming pool. Velynda Shaw stated that if the manager, Lawson at the time of the accident, had any problems with the pool, he would handle the situation. She continued that if the manager felt the police needed to be called, he would do so and she would be informed at a later time. Velynda Shaw's affidavit states that she used the money in the pool account to pay for pool expenses, and there is no evidence that Barron and the Seymours had any input as to how these funds were expended. Based on the foregoing, we conclude that Barron and the Seymours did not have custody of the swimming pool as required by La. C.C. art. 2317.

Vicarious liability of Barron and the Seymours for Lawson's acts
Plaintiff contends that because the fees paid by Barron and the Seymours were deposited into the bank account out of which Lawson's salary was paid, and because Lawson's acts of cleaning and maintaining the pool benefitted Barron and the Seymours, these Defendants are vicariously liable for Lawson's actions and omissions. Plaintiff alleges in his brief to this court that, "Lawson was hired by the Shaws to clean, maintain and supervise the use of the pool on behalf of the Shaws as well as James Barron, Ed Seymour, Jr. and Ed Seymour, III." Plaintiff also argues in his brief that Velynda Shaw was acting as the agent of Barron and the Seymours when she hired Lawson.
Plaintiff does not discuss any of the evidence presented to support his two claims. In fact, the evidence does not support either claim. The evidence shows that the Shaws hired Lawson first to manage their own apartment building and then to maintain the grounds and pool of their apartment building. The Shaws paid Lawson from the swimming pool bank account and the Shaws directed and controlled his employment activities. Lawson even acknowledged in his deposition that the Shaws were his employers. We conclude that Barron and the Seymours were not vicariously liable for the actions and omissions of Lawson.

Lawson an insured under insurance policy of Barron or the Seymours
Plaintiff argues that Lawson was covered under the apartment business liability policy issued by State Farm to Barron and the commercial general liability policy issued by Aetna to the Seymours. Plaintiff claims that Lawson qualifies as an insured under the two policies because they both define an insured as an employee or real estate manager. Plaintiff contends that testimony of Velynda Shaw and Lawson raises issues of fact as to whether Lawson was an employee or real estate manager of Barron and the Seymours. Plaintiff, however, points to no specific testimony which creates these factual issues.
We view the evidence as establishing that Lawson was neither an employee nor a real *772 estate manager for Barron and the Seymours. Lawson was hired by the Shaws and was subject to the control and direction of Velynda Shaw. Lawson reported his hours worked to Velynda Shaw and reported problems to Velynda Shaw. The Shaws paid Lawson for his services of cleaning and maintaining the pool. Lawson performed his duties on the Shaws' property.
There is no evidence to show that Barron or the Seymours exercised any control over Lawson or that Lawson took any directions from Barron and the Seymours. As previously stated, Lawson even testified that he was employed by the Shaws. Barron and the Seymours paid assessment fees so that their tenants could have access to the Shaws' pool. The Shaws determined how these funds were expended, they hired Lawson and they paid him a salary. It is clear from the evidence that Lawson was neither an employee nor a real estate manager of Barron or the Seymours. As such, Lawson is not an insured under the State Farm or Aetna policies.

Medical benefits coverage
Plaintiff, in his Third Amending Petition filed June 14, 1996, claimed that the general liability policies issued by State Farm and Aetna provided medical benefits coverage for his medical expenses. There appears to be some confusion as to whether the trial court's judgment dismissed Plaintiff's claim of medical benefits coverage for his medical expenses under the general liability policies. In his fifth assignment of error, Plaintiff states, "The trial court erred in finding that the policies issued by State Farm and Aetna Casualty did not provide medical expense benefits to plaintiff." Plaintiff states in his brief, however, that the trial judge's "reasons" for judgment make no reference to the claim for medical payments benefits under the insurance policies. We do not agree with Plaintiff's fifth assignment of error.
We note that the trial court's judgment specifically reserves Plaintiff's rights against State Farm and what apparently must have been Aetna with respect to alleged medical payment benefits due.[3] For these reasons, we conclude that the trial court did not grant summary judgment on the issue of medical benefits coverage under the insurance policies, but reserved Plaintiff's rights against State Farm and Aetna with respect to medical payment benefits due.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Plaintiff.
AFFIRMED.
NOTES
[1] Plaintiff also joined an additional defendant not pertinent to this appeal.
[2] We note that La. C.C.P. art.1915 was amended by 1997 La. Acts No. 483 § 2; however, we agree with the First Circuit Court of Appeal that this amendment does not apply retroactively to summary judgments signed prior to the amendment's effective date of July 1, 1997. The judgment in the present case was signed on June 17, 1997. See Morgan v. The Earnest Corp., 97-0869 (La.App. 1st Cir. 11/7/97), 704 So.2d 272; Kanz v. Wilson, 96-0882 (La.App. 1st Cir. 11/17/97), 703 So.2d 1331; Best Fishing, Inc. v. Rancatore, 96-2254 (La.App. 1st Cir. 12/29/97), 706 So.2d 161.
[3] In his judgment, the trial judge, while discussing Barron and State Farm, reserves Plaintiff's rights against State Farm concerning medical payment benefits. The trial judge, however, in discussing the Seymours and Aetna, again reserves Plaintiff's rights against State Farm rather than Aetna. We treat this as a typographical error and treat the judgment as reserving Plaintiff's rights against both State Farm and Aetna with respect to alleged medical payment benefits due.