764 So.2d 313 (2000)
Greg GILBERT, Plaintiff-Appellant,
v.
B.D.O.W.S., INC., et al., Defendants-Appellees.
No. 33,006-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2000.
*315 Theus, Grisham, Davis & Leigh by J. Michael Hart, Phillip D. Myers, Monroe, Counsel for Appellant.
Stafford, Stewart & Potter by Russell L. Potter, Andrew P. Texada, Alexandria, Counsel for Appellee, Aetna Casualty & Surety Co. of Conn.
Charles Tutt, Shreveport, Thomas A. Bordelon, Natchitoches, Counsel for Appellee, State Farm Fire & Casualty Ins. Co.
Snelling, Breard, Sartor, Inabnett & Trascher by Jon K. Guice, Monroe, Counsel for Appellee, Thomas L. Lawson.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Jody T. Benson, Shreveport, Counsel for Appellees, Ed Seymour, Jr., and Ed Seymour, III.
Hudson, Potts & Bernstein by Brady D. King, II, Monroe, Counsel for Appellee, Dr. James E. Barron.
Before NORRIS, WILLIAMS, STEWART, CARAWAY and DREW, JJ.
STEWART, J.
Greg Gilbert ("Gilbert"), the plaintiff in this personal injury action, seeks reversal of summary judgments in favor of State Farm Fire and Casualty Insurance Company ("State Farm"), as insurer of Thomas Lawson ("Lawson") and Dr. James Barron ("Dr.Barron"), and in favor of Aetna Insurance Company ("Aetna"), as insurer of Ed Seymour, Jr. and Ed Seymour, III (the "Seymours"). The issues presented are (1) whether the trial court erred in finding no coverage under the State Farm policy for any liability Lawson may incur in these proceedings; (2) whether the trial court erred in finding that State Farm did not waive any coverage defenses under the policy issued to Lawson; and (3) whether the trial court erred in finding no coverage under the State Farm policy insuring Dr. Barron and under the Aetna policy for medical payments benefits. For the following reasons, we reverse the summary judgment in favor of State Farm, as Lawson's insurer, and remand for further proceedings. However, we affirm the trial courts ruling that State Farm did not waive coverage defenses and the summary judgments in favor of State Farm, as Dr. Barron's insurer, and Aetna, finding that their policies do not provide medical payments coverage in this instance.

FACTS
The facts of this matter have been set forth in detail in Gilbert v. B.D.O.W.S., Inc., 30,439 (La.App.2d Cir.4/08/98), 711 So.2d 765, review denied, 98-1269 (La.6/26/98), 719 So.2d 1059. In summary, Gilbert sustained injuries which rendered him a quadriplegic when he dove into a swimming pool at the Oliver North apartment complex in Monroe, Louisiana, while visiting Tracy Gandy, a college friend and tenant at the Oliver North apartments. Gilbert filed suit for damages against Sherman and Velynda Shaw (the "Shaws"), the owners of both the apartment building in which Gandy resided and the pool in which the accident occurred. By amendments to his petition, Gilbert also named as defendants the other owners of the apartment buildings comprising the complex and their insurers. These defendants included Thomas Lawson and his insurers, State Farm and Aetna; Dr. Barron and his insurer, State Farm; and the Seymours and their insurer, Aetna. Gilbert alleged that these defendants were jointly liable with the Shaws for acts of negligence in maintaining the pool because they shared the cost, upkeep, custody, garde, and use of the pool with the Shaws. The basis for this allegation was that Lawson, Dr. Barron, and the Seymours paid a per *316 apartment assessment fee to the Shaws to allow their tenants to use the Shaws' pool.
Gilbert also alleged that Lawson was an agent, manager, or employee of the Shaws, the Seymours, and Dr. Barron, who were vicariously liable for his acts of negligence, and that Lawson committed acts of fault in a dual capacity as apartment owner and pool manager. Underlying these allegations are the facts that, in addition to owning apartments in the complex, Lawson was hired by the Shaws to manage their apartments and to oversee, clean, and maintain the pool. The Shaws paid Lawson for his pool management services with funds collected from the per apartment assessment fee paid by the other apartment owners. Lawson was also the sole proprietor of a janitorial business known as G & L Janitorial, which provided commercial and residential cleaning services. Lawson is insured under two policies providing commercial liability insurance coverage. A policy issued by Aetna lists the insured as G & L Janitorial Service d/b/a Tommy Lawson, and a policy issued by State Farm lists the insured as Thomas L. Lawson.
In Gilbert v. B.D.O.W.S., Inc., supra, we affirmed summary judgments in favor of Dr. Barron and his insurer, State Farm, and the Seymours and their insurer, Aetna. We determined, as did the trial court, that Dr. Barron and the Seymours owed no duty to the plaintiff to insure the safety of the pool simply because they paid a per apartment assessment fee to the Shaws so that their tenants could have access to the Shaws' pool. We also determined that neither Dr. Barron nor the Seymours could be held liable under a strict liability theory since neither party exercised any control over the swimming pool and, accordingly, had neither custody nor garde of the pool. Finally, we determined that Lawson would not be an insured under the insurance policies of Dr. Barron or the Seymours since Lawson was neither an employee nor real estate manager for these parties. Although we found that the summary judgment appropriately dismissed these parties as to the liability claims, we noted that the trial court's judgment specifically reserved Gilbert's rights against State Farm and Aetna with respect to his claims for medical payments benefits.
Thereafter, State Farm and Aetna, as insurers for Dr. Barron and the Seymours respectively, filed for summary judgment asserting that they owe no medical benefits coverage because the accident did not occur, as required by the policy provisions, either on their insureds' premises, on the ways next to their insureds' premises, or because of their insureds' operations. State Farm, as Lawson's insurer, also filed a motion for summary judgment, claiming that its policy covered only the operation of Lawson's apartments. State Farm asserted that, based on the prior determination that Dr. Barron and the Seymours owed no duty to Gilbert because of their ownership of the adjacent apartments, Lawson, too, owed no duty as the owner of adjacent apartments. According to State Farm, any duty owed by Lawson would arise out of his status as an employee of the Shaws and would not be covered under the State Farm policy. In opposition to State Farm's motion, Gilbert argued, in part, that State Farm waived any coverage defenses by filing a joint answer on December 7, 1995 and failing to retain separate counsel for itself and its insured, Lawson, until September 1996, even though it knew the full extent of Lawson's pool services after his deposition on October 6, 1995.
In a ruling on February 26, 1999, the trial court granted summary judgments in favor of the defendants. The trial court found no medical payments coverage available for this accident under either Dr. Barron's State Farm policy or the Seymours' Aetna policy. The trial court also found that Lawson's State Farm policy provided coverage for the operation of his apartment building and that coverage did not extend to Gilbert's accident which did *317 not occur on premises owned by Lawson or arise out of the operation of his apartment business. Furthermore, the trial court concluded that State Farm did not waive its coverage defenses.[1]

DISCUSSION
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.3/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Gilbert v. B.D.O.W.S., Inc., supra; Leckie v. Auger Timber Company, Inc., 30,103 (La.App.2d Cir.1/21/98), 707 So.2d 459. The burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). When a motion is made and supported as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Appellate courts review summary judgments de novo, utilizing the same criteria that guide the trial court's consideration of motions for summary judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Yarbrough v. Federal Land Bank of Jackson, supra; Bockman v. Caraway, 29,436 (La. App.2d Cir.4/2/95), 691 So.2d 815.
The purpose of liability insurance is to provide the insured protection from damage claims. Therefore, insurance contracts should be interpreted to effect, rather than to deny coverage. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024; Yount v. Maisano, 627 So.2d 148 (La.1993). An insurance policy is a conventional obligation which constitutes the law between the parties and governs the nature of their relationship. La. C.C. art. 1983; Peterson, supra. As such, the general rules of contract interpretation, as set forth in our Civil Code, guide our interpretation of insurance contracts. Id. The extent of coverage is determined from the intent of the parties as reflected by the words of the policy. Id. Our role in interpreting contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. La. C.C. art. 2045; Peterson, supra.
With these general principles in mind, we turn now to the issues presented for our review.

Coverage of State Farm's "Apartment Policy"
In asserting that the trial court erred in granting summary judgment in favor of State Farm, Gilbert argues that the liability coverage under the policy is not restricted to Lawson's apartment business, but rather extends to any business of which Lawson is the sole owner. Gilbert reasons that Lawson is the sole owner of G & L Janitorial which benefits from his pool management services, since Lawson deposits his payment for such services into G & L's accounts. Accordingly, Gilbert concludes that the State Farm policy provides coverage for G & L Janitorial, which may bear some liability for the incident at issue.
The State Farm policy at issue is labeled an "Apartment PolicySpecial Form 3." The declarations page lists the named insured *318 as "Thomas L. Lawson," and refers to the covered premises as 2318 Ft. Miro, Monroe, Louisiana, which is the address of Lawson's apartments. The Comprehensive Business Liability section of the policy provides, in pertinent part:
We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies... This insurance applies only:
1. To bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period.
. . .
If you are designated in the Declarations as
a. an individual, you and your spouse are insureds but only with respect to the conduct of a business of which you are the sole owner;
. . .
Coverage territory means:
a. the United States of America (including its territories and possessions), Puerto Rico and Canada;
. . .
Occurrence means:
a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage.
Relevant to our determination of the appropriateness of summary judgment in favor of State Farm is the Louisiana Supreme Court's decision in Peterson, supra, which was rendered shortly after the trial court's ruling in this matter. At issue in Peterson was the scope of coverage provided under a commercial liability policy labeled "Lafayette Premises Commercial Uni-Saver Policy." The Lafayette policy included provisions almost identical to those from the State Farm policy set forth above.
In Peterson, the plaintiff, who was Dr. Schimek's lessee, fell at the leased premises and sustained bodily injuries. Dr. Schimek was insured under two policies. The coverage under one policy was not in dispute; however, the coverage under the Lafayette policy was disputed. The Lafayette policy provided $1,000,000 coverage per occurrence for personal injury sustained on business property of which Dr. Schimek was the sole owner. The insurer, Lafayette, contended that the policy provided coverage only for those buildings listed on the declarations page, which did not include the rental property where the accident occurred, and applied only to the liability of Dr. Schimek as the sole owner of his medical businesses. At issue was whether the Lafayette policy also covered Dr. Schimek's rental property where the accident occurred. On summary judgment, the trial court determined that nothing in the Lafayette policy excluded coverage for Dr. Schimek's negligence with respect to his rental property. The appellate court affirmed the trial court's judgment. Lafayette filed a writ to the supreme court contending that its policy was written to cover only those medical businesses listed on the declarations page.
The supreme court reviewed the policy language and found the provisions broad and not clearly restrictive to those businesses listed on the declarations page. Although the declarations page listed specific businesses, the court stated that the policy must be reviewed as a whole to determine the actual agreement between the parties. Viewing the policy as a whole, the court determined that the four corners of the contract did not restrict coverage to Dr. Schimek's medical businesses listed on the declarations page.
The policy included no language restricting coverage to medical businesses only. Rather, the insurance contract obligated Lafayette to pay all damages which Dr. Schimek became legally obligated to pay because of bodily injury caused by an occurrence in the coverage territory to which *319 the policy applied. The plaintiff alleged an occurrence, as defined by the policy, resulting in bodily injury. The alleged accident occurred in the coverage territory, and Dr. Schimek was an insured under the policy as he was an individual and the sole owner of the premises leased to the plaintiff. The court concluded that the Lafayette policy, by its clear and explicit terms, provided coverage to Dr. Schimek. Finally, the court rejected Lafayette's argument that the contract should be reformed to reflect the parties' true intent of insuring only the medical businesses owned by Dr. Schimek. The policy terms were clear and unambiguous, thus resort to parol evidence was unnecessary. Also, assuming any ambiguity existed in the contract, the court stated that it would be due to Lafayette's structure of the insurance contract and must be construed against the maker, Lafayette.
Based upon our appreciation of Peterson, supra, and our review of the insurance contract in the instant matter, we find that the State Farm "Apartment Policy" is not clearly restricted in coverage only to liability incurred by Lawson with respect to his apartment business. Although the policy is labeled an apartment policy and the declarations page lists the address of Lawson's apartment business as the covered premises, the policy, viewed as a whole, does not clearly restrict coverage only to Lawson's apartment business. Rather, the policy can be viewed as extending coverage to any occurrence, defined as an accident, in the coverage territory which results in bodily injury. The plaintiff, Gilbert, has alleged an accident in the coverage territory resulting in bodily injury. Lawson is listed as the insured on the declarations page and qualifies as an insured under the policy, as he is an individual and the sole owner of a business which may bear some liability in the accident at issue. Even if we view the designation of the contract as an "apartment policy" and the broad policy language as ambiguous, such ambiguity in the structure of the insurance contract would have been caused by State Farm and would, under La. C.C. art. 2056, be construed against the maker. We believe that a genuine issue of material fact exists as to whether the State Farm policy covers only Lawson's apartment business or whether it covers G & L Janitorial, another business solely owned by Lawson.
State Farm argues that this court in Gilbert, supra, has already determined that Lawson was acting as an employee of the Shaws in his management of the pool.[2] As such, there would be no coverage under the policy since Lawson was not acting in the capacity as sole owner of a business when he attended to the Shaws' pool. Our review of this court's prior decision in Gilbert, supra, finds no ruling by this court on the issue of whether Lawson, in his management of the Shaws' pool, was an employee of the Shaws or an independent contractor working on behalf of his own business. This issue has not been decided by the trial court and is not properly before this court at this time. Statements in Gilbert, supra, regarding Lawson's status with respect to his pool management duties were made in the context of determining the possible liability of Dr. Barron and the Seymours for Gilbert's accident and should not be construed as determinative of the issue of Lawson's status. The existence of this issue of material fact is further support for our determination that summary judgment in favor of State Farm is not appropriate at this time.
Because there are issues of material fact as to the scope of coverage under the State Farm policy insuring Lawson and the status of Lawson as an employee or independent contractor working for the Shaws on behalf of G & L Janitorial, we find that the trial court erred in granting summary judgment in favor of State Farm. *320 Waiver of Coverage Defenses by State Farm
Gilbert also contends that State Farm waived any coverage defenses it may have by failing to retain separate counsel for itself and its insured, Lawson, once it had notice of facts sufficient to raise coverage defenses. The trial court rejected this claim upon determining that the requirements for waiver had not been met.
Waiver is the intentional relinquishment of a known right, power, or privilege. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371 (La.1987); Cassey v. Stewart, 31,437 (La.App.2d Cir.1/20/99), 727 So.2d 655, review denied, 99-0811 (La.4/30/99), 743 So.2d 209; Holt v. Aetna Cas. & Sur. Co., 28,450 (La. App.2d Cir.9/3/96), 680 So.2d 117, review denied, 96-2515 (La.12/6/96), 684 So.2d 937 and 96-2523 (La.12/6/96), 684 So.2d 938. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Steptore, supra; Tate, supra; Holt, supra.
An insurer is charged with knowledge of the contents of its own policy. Upon notice of facts which would cause a reasonable person to inquire further, the insurer has a duty to investigate. Failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. Steptore, supra; Cassey, supra; Holt, supra. As provided in Steptore, supra, waiver principles are to be applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could affect legal representation. The purpose of strict application is to reinforce the role of the lawyer as the loyal advocate of the client's interest. Steptore, supra.
The record shows that Gilbert filed suit on July 1, 1993, naming the Shaws as defendants and alleging theories of negligence and strict liability. Gilbert specifically alleged that the Shaws were at fault in failing to have "no diving" signs, failing to have proper depth markers, failing to have proper lighting conditions, and failing to delineate the shallow end of the pool from the deep end. In a "First Supplemental and Amending Petition," Gilbert named Lawson along with Dr. Barron and the Seymours as defendants claiming that as apartment owners, they shared with the Shaws the cost, upkeep, custodial authority, garde and use of the pool and that they were jointly liable with the Shaws for damages sustained by Gilbert due to the acts of negligence set forth in the original petition. In a deposition taken October 6, 1995, Lawson discussed his ownership of apartments at the Oliver North complex and described his pool-related duties. On December 7, 1995, State Farm filed an answer on behalf of itself and Lawson, generally denying the allegations of the plaintiff's petition. In a "Second Supplemental Petition" filed May 1, 1996, Gilbert alleged that Lawson acted as an agent, servant, manager, or employee of the other defendants, and in a "Fourth Supplemental Petition" filed August 2, 1996, Gilbert alleged that Lawson committed acts of fault while performing in a dual function as apartment owner and manager or employee on behalf of the other apartment owners. In September 1996, Lawson and State Farm filed separate answers.
Our review of the record reveals no conduct on the part of State Farm inconsistent with the intent to enforce its right to allege a coverage defense so as to induce a reasonable belief by the insured, Lawson, that any coverage defense had been relinquished. The "First Supplemental and Amending Petition" alleges fault on the part of Lawson as an apartment owner sharing custodial authority over the pool where the accident occurred. It was not until the "Second Supplemental Petition" filed after Lawson's deposition, that Gilbert *321 alleged fault on the part of Lawson as an agent or employee of the other defendants, rather than as an apartment owner. At this point, a possible coverage defense came into existence, namely, that Lawson was not acting in the capacity as sole owner of a business. In Steptore, supra, relied upon by the plaintiff herein, a possible coverage defense was evident to the insured upon service of the petition which stated that the accident occurred in Ascension Parish, a fact clearly in opposition to the policy's navigation warranty which required the barge to be located at facilities in St John the Baptist Parish.
We also note that the burden of proving a knowing and voluntary waiver falls on the party who demands performance, the insured. Tate, supra; Bailey v. Robert V. Neuhoff Ltd. Partnership, 95-0616 (La.App. 1st Cir. 11/9/95), 665 So.2d 16, review denied, 95-2962 (La.2/9/96), 667 So.2d 534. Here, Lawson has not challenged the trial court's ruling on the waiver issue or otherwise indicated that he had a reasonable belief that State Farm relinquished any coverage defenses it might have prior to obtaining separate counsel.
Based on the foregoing discussion, we find no error in the trial court's ruling that the requirements for establishing waiver were not met.

Medical Payments Coverage
Gilbert contends that the trial court erred in granting summary judgment in favor of State Farm, as Dr. Barron's insurer, and Aetna, as the Seymours' insurer, upon finding no coverage under their policies for medical payments benefits. Gilbert argues that medical payments coverage does not require a finding of fault, but merely requires that the accident occur because of the insured's operations.
Both the State Farm policy and the Aetna policy provide for payment of medical expenses when an accident occurs (1) on premises owned or rented by the insured; (2) on areas of egress or on ways next to premises owned or rented by the insured; or (3) because of the insured's operations. The plaintiffs accident did not occur on premises owned or rented by either Dr. Barron or the Seymours, nor did the accident occur on ways of egress or on ways next to premises owned or rented by these defendants. At issue is whether the accident occurred because of the "operations" of Dr. Barron or the Seymours.
Neither the State Farm policy nor the Aetna policy defines the term "operations." However, when words of a contract are clear and explicit and lead to no absurd consequences, the contract is to be enforced as written without further interpretation in search of the parties' intent. La. C.C. art. 2046; Peterson, supra. Words of a contract must be given their generally prevailing meaning, unless such words have acquired a technical meaning. La. C.C. art. 2047; Peterson, supra. The term "operations" as used in the policies does not appear to have a technical meaning apart from the ordinary usage of the word. The term "operation" is defined as "an act or instance, process, or manner of functioning or operating." Websters College Dictionary, 948 (1991).
Gilbert argues that because Dr. Barron and the Seymours paid a per apartment assessment fee for their tenants to have access to the Shaws' pool, the accident occurred because of their operations. While payment of the fee may be considered part of Dr. Barron's and the Seymours' operations, the accident at issue did not occur because of their process or manner of operating or functioning. Payment of the fee did not provide the plaintiff with access to the pool. As previously determined in Gilbert, supra, neither Dr. Barron nor the Seymours owed a duty to ensure the safety of the pool and neither exercised any control over the pool. As such, the operation or management of the pool cannot be considered as an operation of either Dr. Barron's or the Seymours' apartment rental business. We, therefore, affirm the trial court's granting of *322 summary judgment in favor of State Farm and Aetna on the issue of medical payments coverage.

CONCLUSION
With regard to the issues pertaining to State Farm as the insurer of Thomas Lawson, we affirm the trial court's ruling that State Farm did not waive coverage defenses; however, we reverse the summary judgment in favor of State Farm and remand for further proceedings. With regard to the issues pertaining to State Farm as the insurer of Dr. James Barron and Aetna as the insurer of the Ed Seymour, Jr. and Ed Seymour, III, we affirm the summary judgments in favor of these defendants finding no medical payments coverage under their respective policies.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
CARAWAY, J., concurs in part and dissents in part with reasons.
CARAWAY, J., concurring in part and dissenting in part.
While I concur in all other rulings of the majority, I dissent regarding the issue of State Farm's apartment policy coverage. There is no genuine issue of material fact regarding Lawson's employment by the Shaws for the management of the pool. He cleaned the pool with chemical supplies and equipment furnished by the Shaws and followed their directives in overseeing the use of the pool by tenants. Although our review of Lawson's employment in the initial appeal of this case does not govern this ruling, the undisputed facts of Lawson's employment relationship with the Shaws have not changed.
NOTES
[1] Aetna, insurer of G & L Janitorial Service d/b/a Tommy Lawson, also filed a motion for summary judgment, which the trial court denied. On May 13, 1999, this court denied a writ application by Aetna, No. 32608-CW, upon determining that an exercise of supervisory jurisdiction was not warranted.
[2] This same argument is raised by Aetna, as Lawson's insurer, in a brief filed in support of upholding summary judgment in favor of State Farm.