732 So.2d 1263 (1999)
Lonnie D. CARROLL, et al., Plaintiff-Appellant,
v.
STATE FARM FIRE & CASUALTY CO., et al., Defendants-Appellees.
No. 31,652-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*1264 John T. Scott, Counsel for Appellant.
Davenport, Files & Kelly, L.L.P. By Carey B. Underwood, Monroe, Counsel for Appellees Chicago Mill and Lumber Company and Providence Washington Insurance Co.
Guglielmo, Lopez, Tuttle, Hunter By H. Douglas Hunter, Opelousas, Counsel for Intervenor Louisiana Retailers Association, Self-Insured Fund.
Before GASKINS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This is a personal injury action arising out of an accident which occurred while Plaintiff Lonnie D. Carroll was moving a piano in a house occupied by Benny Roberson and his wife. Lonnie D. Carroll and Regina Carroll ("Plaintiffs") filed suit against Chicago Mill and Lumber Company ("Chicago Mill"), Providence Washington Insurance Company ("Providence Washington"), State Farm Fire & Casualty ("State Farm") and Benny Roberson. Chicago Mill and Providence Washington filed a motion for summary judgment which the trial court granted. It is from that adverse judgment that Plaintiffs appeal.

FACTS
Chicago Mill is an agricultural land owner of 71,000 acres located in East Carroll, Franklin, Madison and Tensas Parishes. It leases the various properties to farmers. Chicago Mill employed a Farm Manager, Benny Roberson, to supervise its farming operations. As part of his compensation package, Chicago Mill provided Mr. Roberson a house in which to live. While *1265 Chicago Mill owned the house, all of the furnishings in the house were owned by Mr. Roberson and/or his wife.
At Mr. Roberson's request, Chicago Mill agreed to pay for new carpet in the house. Mr. Roberson, on behalf of Chicago Mill, contacted Henry Hays Carpet and Decorating, Inc. ("Henry Hays") and requested a bid from that company for the replacement of carpet in two houses owned by Chicago Mill. Chicago Mill accepted the bid. Henry Hays then subcontracted the installation of the carpet to Plaintiff Lonnie Carroll.
On June 19, 1995, Mr. Carroll was allegedly injured while moving a piano in order to install the carpet in Mr. Roberson's home. While moving the piano, a portion of the end of the piano leg fell off causing Mr. Carroll to stumble, fall and sustain injuries.
On April 2, 1996, Plaintiffs filed suit against State Farm, Chicago Mill, Providence Washington and Mr. Roberson. On January 30, 1998, Chicago Mill and Providence Washington filed a motion for summary judgment which was granted by the trial court. For the reasons stated herein, the judgment of the trial court is affirmed.[1]

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district courts' consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Hammons v. City of Tallulah, 30,256 (La.App.2d Cir.2/25/98), 708 So.2d 502; Anderson v. Allstate Ins. Co., 29,847 (La.App.2d Cir.9/24/97), 699 So.2d 1160. An appellate court thus asks the same question as does the trial court in determining whether summary judgment is appropriate, whether there is any issue of material fact and whether the mover is entitled to judgment as a matter of law. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993); Berzas v. Oxy USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477. The summary judgment procedure is now favored and "shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).
Under the current summary judgment standard, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art 966(C); Berzas v. OXY USA, Inc., supra.
Plaintiffs argue that the trial court erred in granting summary judgment in favor of Chicago Mill and Providence Washington because there are factual issues as to whether Chicago Mill may be liable under the theories of strict liability, negligence and vicarious liability. We disagree.

Strict Liability and Negligence
When strict liability and negligence are urged as alternate grounds of recovery, the plaintiff must prove that the thing which caused the injury or damage was in the custody of the defendant, that the thing was defective because its condition created an unreasonable risk of harm, *1266 that the defendant knew or should have known of the defect and failed to take corrective measures within a reasonable time and that the defect was a cause-in-fact of the plaintiffs injuries. La. R.S. 9:2800; Haile v. City of Monroe, 31,315 (La.App.2d Cir.12/9/98), 722 So.2d 1192, and cases cited therein.
Specifically, Plaintiffs contend that Chicago Mill is strictly liable for Mr. Carroll's injuries under La. C.C. art. 2317, which states in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody.
To recover under article 2317, Plaintiffs must prove that Mr. Carroll was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Gilbert v. B.D.O.W.S., Inc., 30,439 (La.App.2d Cir.4/8/98), 711 So.2d 765. Article 2317 imposes strict liability on the person maintaining custody (garde) of the defective thing; this legal relationship creates an obligation imposed by law on a thing's owner, or one who avails himself of it, to prevent it from causing damage to others. Loescher v. Parr, 324 So.2d 441 (La.1975); Gilbert, supra; DeRouen v. Audirsch, 25,847 (La.App.2d Cir.6/28/94), 639 So.2d 476. Having garde of a thing connotes a certain degree of control or right of direction over the thing and the derivation of some benefit from the thing. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991); King v. Louviere, 543 So.2d 1327 (La. 1989); Gilbert, supra; DeRouen, supra.
Chicago Mill employed Mr. Roberson and owned the house in which he lived; however, the piano in question was actually owned by Mr. Roberson's wife. Other than providing the Robersons with a house in which to live, Chicago Mill had absolutely no connection with the personal effects of the Robersons. The undisputed facts reveal that Chicago Mill had no authority over the piano, had no control over the piano and received no direct or indirect benefit from the piano.
After a careful review of the record, we find that Chicago Mill did not have custody or garde of the piano which would create a duty with regard to the piano to third persons such as Mr. Carroll. As such, we find that Plaintiffs have failed to produce factual support sufficient to survive summary judgment under a theory of strict liability.
Likewise, since we find that Chicago Mill did not have custody of the piano, Plaintiffs' negligence claims also fail.[2] The lack of relationship between Chicago Mill and the piano leads us to conclude, as did the trial court, that Chicago Mill owed no duty to Mr. Carroll for alleged defects existing in the piano.
A duty/risk analysis is used to determine whether to impose liability for negligence under La. C.C. art 2315. In order for negligence liability to attach, a plaintiff must prove that (1) the defendant had a duty to conform its conduct to a specific standard of care (duty element); (2) the defendant failed to conform its conduct to the appropriate standard (breach of duty element); (3) the defendant's substandard conduct was a cause-infact of the plaintiff's injuries (cause-in-fact element); (4) the defendant's conduct was a legal cause of the plaintiff's injuries (legal cause element) and (5) actual damages. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/97), 646 So.2d 318; Gilbert, supra.
The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Mathieu, supra; Gilbert, supra. The duty issue, therefore, may be appropriate for *1267 resolution by summary judgment. La. C.C.P. art. 966(B).
As previously stated, it was undisputed that Chicago Mill did not own the piano, nor did it have custody of the piano. Additionally, Chicago Mill had no knowledge of the alleged defect and had no way of knowing that such defect existed. We, therefore, agree with the trial court's finding that Chicago Mill had "no duty to anyone for alleged defects existing in or within the piano and had no knowledge that the piano had an alleged defect which had some connection with the accident in this case." As such, summary judgment was properly granted with respect to any alleged liability under a negligence theory.

Vicarious Liability
Plaintiffs assert that the economic relationship between Mr. Roberson and Chicago Mill supports a finding of liability under the theory of vicarious liability. The law is well-settled in this area. In order to hold an employer liable for the tortuous acts of its employee, the tortuous act must come within the scope of employment between the employer and employee. The factors considered in making such a determination are as follows:
(1) The act was primarily employment rooted;
(2) The act was reasonably incidental to the performance of employment duties;
(3) The act occurred during work hours; and
(4) The act occurred on the employer's premises.
LeBrane v. Lewis, 292 So.2d 216 (La.1974); Washington v. Reed, 624 So.2d 465 (La. App. 2d Cir.1993). Further, the employee's tortuous conduct must be "so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business." Id. The undisputed facts in the case sub judice clearly indicate that there was no connection whatsoever between the piano and its alleged defect and Chicago Mill. Chicago Mill agrees that Mr. Roberson was its employee at the time of the accident, that it contracted with and paid Henry Hays for the carpet and that it owned the house in which Mr. Roberson lived. In fact, none of the facts on which Plaintiffs rely are disputed by Chicago Mill and none of those facts support a finding of vicarious liability. Moreover, Mr. Roberson testified that Chicago Mill had nothing to do with the piano and that none of Mr. Roberson's job duties were in any way related to the piano. The mere fact that there existed an economic relationship between Mr. Roberson and Chicago Mill does not alone create a duty on the part of Chicago Mill with respect to the piano. The trial court stated:
This is not a situation of imputed liability because Chicago Mill and Lumber Company never assumed any responsibility or control over the piano. The economic relationship between Mr. Roberson and Chicago Mill, I believe, does not create a liability relationship between Chicago Mill and the piano. I just cannot believe that that relationship economically would extend to an alleged defect in the leg of the piano in question simply because it was resting in a home owned by Chicago Mills.
We agree with the trial court and, therefore, affirm the granting of summary judgment in favor of Chicago Mill and Providence Washington.

CONCLUSION
For the reasons stated herein, the judgment of the trial court is affirmed and all costs are assessed to Plaintiffs.
AFFIRMED.
NOTES
[1] Providence Washington Insurance Company issued a liability policy to Chicago Mill, which was in effect at the time of Mr. Carroll's accident. In order for coverage to exist under Providence Washington's policy, there must be liability on the part of Chicago Mill. Providence Washington, therefore, was properly included in the summary judgment.
[2] Plaintiffs' petition contains many allegations of negligence attributable to Chicago Mill, the crux of which are the failures to warn, inspect and repair the piano.