855 So.2d 844 (2003)
Paul KLEIN and Diana Klein, Plaintiffs-Respondents,
v.
CISCO-EAGLE, INC., Wray Ford, Inc., and Wray Enterprises, LLC, Defendants-Applicants.
No. 37,398-CW.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
*845 *846 Rountree, Cox, Guin & Achee, by Dale G. Cox, Shreveport, for Defendants/Applicants, Wray Ford, Inc. and Wray Enterprises, LLC.
Mayer, Smith & Roberts, L.L.P., by Caldwell Roberts, Jr., Shreveport, for Defendant/Respondent, Cisco-Eagle, Inc.
Sockrider, Bolin, Anglin & Batte, by James E. Bolin, Jr., for Plaintiffs/Respondents.
E. Gerrald & Company, by Eddie Gerrald, In Proper Person.
Before PEATROSS, DREW & MOORE, JJ.
PEATROSS, J.
This appeal arises out of the building of a new Wray Ford dealership on Benton Road in Bossier City. Defendants Wray Ford, Inc. ("Wray Ford") and Wray Enterprises, LLC ("Wray Enterprises") filed an Application for Writ of Certiorari or Review in this court requesting review of the trial court's denials of motions for summary judgment filed by them. This court granted a writ of certiorari, issued a stay in the matter and docketed the case for review. After our review of the merits, and for the reasons stated herein, we reverse the judgment of the trial court and render summary judgment in favor of both Wray Ford and Wray Enterprises.

FACTS
Wray Ford operates a Ford dealership in Shreveport and desired to open a new dealership on Benton Road in Bossier City. Wray Enterprises was created to purchase the land on which the dealership would be constructed and to facilitate construction of the building. In August 1999, a bid on the project submitted by Hand Construction Company ("Hand"), general contractor, was accepted by Wray Ford. Subsequently, Wray Enterprises contracted with Hand to erect the building ("the construction contract"). Hand sub-contracted all of the electrical work on the project to Camus Electric Company, Inc. ("Camus").
Subsequently, Wray Ford decided that it wanted a parts storage system created *847 within the structure. The parts storage system is an elaborate system of metal shelving and metal walkways, including stairs, designed to house the dealership's inventory of car parts. Wray Ford contracted directly with Cisco-Eagle, Inc. ("Cisco-Eagle") to construct the mezzanine parts storage system ("parts storage contract"). Cisco-Eagle, in turn, sub-contracted with E. Gerrald and Company ("Gerrald") to construct the parts storage system. During construction of the dealership, George Wray, III, president of Wray Ford and an owner in Wray Enterprises, visited the site several times a week to check on the progress of the construction.
On August 23, 2000, while the construction was ongoing and before the parts storage system was complete, Plaintiff, Paul Klein, employee of and foreman for Camus, was demonstrating to Hand's supervisor how he was going to install the third floor ceiling lights when he fell through an opening in the metal grate flooring on the second level of the parts storage system. Mr. Klein severely injured his hip and knee in the fall and he and his wife sued Wray Ford, Wray Enterprises, Cisco-Eagle and Gerrald, alleging negligent hiring, general negligence and strict liability for his accident.
Wray Ford and Wray Enterprises denied liability and subsequently filed motions for summary judgment, which were denied by the trial court. After granting Wray Ford's and Wray Enterprises's Application for Writ of Certiorari or Review, we now review the merits of this appeal.

DISCUSSION
Law of summary judgment
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action except those disallowed by law. La. C.C.P. art. 966(A)(2); Robinson v. Brookshires #26, 33,713 (La.App.2d Cir.8/25/00), 769 So.2d 639, citing Norton v. Claiborne Electric Co-op, Inc., 31,886 (La.App.2d Cir.5/5/99), 732 So.2d 1256, writs denied, 99-1737, 99-1823 (La.10/1/99), 748 So.2d 443, 454 and Lee v. Wall, 31,468 (La. App.2d Cir.1/20/99), 726 So.2d 1044. The judgment sought shall be rendered only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Norton, supra; Ledent v. Guaranty National Insurance Co., 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531. La. C.C.P. art. 966(C)(2), enacted by the legislature in 1997, clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
In other words, the party who bears the burden of persuasion at trial (typically the plaintiff) must come forth with evidence which demonstrates his or her ability to meet the burden at trial. Babin v. Winn-Dixie Louisiana, Inc., 00-0078 (La.6/30/00), 764 So.2d 37, citing MARAIST *848 AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, §§ 6.8 (1999). The plaintiff must make a positive showing of evidence creating a genuine issue as to an essential element of its claim. Mere speculation is not sufficient. Babin, supra. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Babin, supra; Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. Whether a particular fact in dispute is material can be assessed only in light of the substantive law applicable to the case. Allen v. State Farm Fire and Casualty Co., 36,377 (La.App.2d Cir.9/18/02), 828 So.2d 190, writ denied, 02-2577 (La.12/19/02), 833 So.2d 343, citing Brittain v. Family Care Services, Inc., 34,787 (La.App.2d Cir.6/20/01), 801 So.2d 457; Spears v. Jones, 00-2799 (La.App. 1st Cir.2/15/02), 807 So.2d 1182, writs denied, 02-0663, 02-0767 (La.5/3/02), 815 So.2d 106, 826.
Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226; Belt v. Wheeler, 36,585 (La.App.2d Cir.12/18/02), 833 So.2d 1256; McEachern v. Mills, 36, 156 (La.App.2d Cir.8/16/02), 826 So.2d 1176.
Existence of a duty
In the case sub judice, the Wray Defendants first argue that the undisputed facts reveal that they are entitled to judgment as a matter of law because they owed no legal duty, contractually or otherwise, to Mr. Klein. The existence of a duty is a legal determination to be made by the trial judge. Taylor v. Voigtlander, 36,670 (La. App.2d Cir.12/11/02), 833 So.2d 1204; Albritton v. Woods, 34,073 (La.App.2d Cir.9/28/01), 795 So.2d 1239; Carroll v. State Farm Fire and Casualty Co., 31,652 (La.App.2d Cir.5/5/99), 732 So.2d 1263. The inquiry is whether the plaintiff has any lawstatutory, jurisprudential or arising from general principles of faultto support his claim. Taylor, supra, citing Paul v. Louisiana State Employees' Group Benefit Program, 99-0897 (La.App. 1st Cir.5/12/00), 762 So.2d 136. A finding that there is no duty owed by a defendant to a plaintiff in a given case is an appropriate basis upon which to grant summary judgment in favor of that defendant. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Truelove v. Bissic, 32,883 and 32,884 (La.App.2d Cir.3/1/00), 754 So.2d 377, writ denied, 00-0950 (La.5/26/00), 762 So.2d 1109; Carroll, supra.
Mr. Klein argues that a genuine issue of material fact exists regarding which entity contracted with whom for the construction of the new dealership and parts storage system. Indeed, it is on this point that the trial court apparently agreed with Mr. Klein, finding that there was confusion in the manner in which the parties contracted for the construction of the dealership and the parts storage system and, thus, there existed an issue of fact for the fact finder. This alleged confusion results in Mr. Klein's argument to this court that both Wray entities should be regarded as one in the same. He submits that Wray Ford's act of directly contracting with Cisco-Eagle for a portion of the work on the project subjected it to certain safety provisions contained in the construction contract between Wray Enterprises and Hand. The construction contract between Wray Enterprises and Hand listed Wray Enterprises as the "owner" and contained language allowing the owner to use its own forces for work on the project or to directly *849 sub-out some of the work if desired; and, if the owner chose to do so, then certain articles of the construction contract concerning coordination of sub-contractors and safety on the project would apply to the owner.[1] If applicable, those provisions would have the effect of making the owner of the construction contract stand in the shoes of the general contractor with respect to safety responsibilities when the owner chooses to perform work on the project with its own forces or directly contracting with a third party for portions of the work. According to Mr. Klein, these provisions operate to impose a duty on both Wray entities to coordinate the subcontractors on the job site and provide a safe workplace. Simply put, Mr. Klein seeks to impute contractual safety provisions contained in the construction contract on an entity, Wray Ford, that was not a party to that contract. In addition, he seeks to place those same safety-related responsibilities on Wray Enterprises as "owner" of the project, despite the fact that Wray Enterprises did not directly contract out any portion of the work. Mr. Klein's position is without merit.
We find no confusion in the manner in which the parties contracted. Likewise, we are unpersuaded by Mr. Klein's argument that there is some basis in contract for any duty on the part of either Wray defendant. First, the undisputed facts clearly show that Wray Enterprises was created for the purpose of acquiring the land on which the dealership would be built and for contracting for the construction of the dealership and the construction contract names Wray Enterprises as owner and Hand as general contractor. Wray Ford, a separate and distinct legal entity, was not a party to, and is not even referenced in, the construction contract. Wray Ford then contracted with Cisco-Eagle for the construction of the parts storage system. Wray Enterprises is not a party, and is not referenced in, the parts storage system contract. No evidence was presented in opposition to the motions for summary judgment that would show that Wray Enterprises and Wray Ford were anything but two separate legal entities. The fact that the bid submitted by Hand was accepted by Wray Ford, rather than Wray Enterprises, does not alter the terms of the subsequent construction contract executed by Wray Enterprises and Hand and does not confuse who are the *850 parties of each of these contracts. We find no genuine issue of material fact here. Second, we simply reiterate that the owner of the construction contract, Wray Enterprises, did not hire and contract with Cisco-Eagle. The above-mentioned safety provisions of the construction contract, therefore, never became operative. Further, the construction contract provides that Hand, as general contractor, assumes all safety responsibilities for the job site.[2] There is no duty based in contract regarding safety of the job site to be imposed on either Wray defendant.
Next, Mr. Klein argues that the Wray defendants, again referring to both Wray entities as one in the same, assumed a duty to provide a safe workplace by virtue of Mr. Wray's visits to the job site and that he allegedly "involved" himself in the lighting decisions regarding the parts storage system mezzanine.
Applying Louisiana law, the Fifth Circuit has consistently held that a principal is not liable for the actions of its independent contractor unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retained "operational control" over the contractor's work or expressly or impliedly approved its unsafe work practice that led to an injury. Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558 (5th Cir.2003), citing Coulter v. Texaco, Inc., 117 F.3d 909 (5th Cir.1997). The issue in the case sub judice concerns the "operational control" avenue of potential principal liability. The first inquiry is whether, and to what extent, the principal contractually reserved the right to control the work. Here, as previously stated, control and supervision of the work site was expressly assumed by Hand in the construction contract and by Cisco-Eagle in the parts storage contract.[3] In addition, recall that the construction contract specifically imposed all safety-related responsibilities on the contractor. See footnote no. 2, supra. "When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control." Fruge, supra. Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. Id. Further, the physical presence of a representative of a principal is not sufficient to show supervision or control. Id., citing Ainsworth v. Shell Offshore, Inc., 829 F.2d 548 (5th Cir.1987), cert. denied, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988).
In Fruge, supra, the court found summary judgment in favor of a principal/defendant *851 appropriate where a representative of the principal was present on the job site 24 hours a day, but there was no evidence of direct supervision and control. The court in Ainsworth, supra, held that periodic inspections by a principal's "company man" do not equate to that principal retaining control over the operations. Likewise, in Migliori v. Willows Apartments, 98-1814 (La.App. 4th Cir.2/3/99), 727 So.2d 1258, writ denied, 99-0873 (La.5/14/99), 741 So.2d 662, the fourth circuit affirmed summary judgment in favor of a defendant/owner, holding that periodic inspections of a job site by an owner to be sure that work was being performed in accordance with specifications did not constitute the exercise of operational control. Finally, in Coulter, supra, the court affirmed summary judgment in favor of a defendant/principal where the principal had reserved the right to monitor the contractor's performance and had placed a "company man" on site who had the right to make safety recommendations to the contractor and was obligated to report continuing unsafe work practices or conditions to the principal. The court expressly stated that this did not equate to having control over the "methods or details of the contractor's work." Coulter, supra. The court in Coulter stated, "[i]n short, absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal ... cannot be liable under the operational control exception." Id.
In the case sub judice, it is undisputed that Mr. Wray visited the site periodically to check on the progress of the work as he so testified in his affidavit. In opposition to the motions for summary judgment, Mr. Klein offered an excerpt of the deposition testimony of Mr. Klein in an effort to show that Mr. Wray was "involved" in a decision as to when to hang the lighting above the parts storage system mezzanine. Specifically, Mr. Klein testified that Mr. Wray told him that the arrangement or positioning of the shelving unit was going to be decided when the units were actually moved into the space. Mr. Klein then testified that it was his suggestion that he wait until the shelves were in place before he install the lighting. This does not equate to operational control on the part of Mr. Wray. Even if Mr. Wray had suggested or instructed Mr. Klein to delay installation of the lights until the mezzanine was complete, this does not equate to control over the "methods or details of the contractor's work." Since Mr. Klein failed to present evidence of this element of his claim, we find summary judgment in favor of the Wray defendants to be appropriate on Mr. Klein's claims of negligence.[4]
Strict Liability
La. C.C. art. 2317 states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
In 1996, the legislature added La. C.C. art. 2317.1 as a modification of the strict liability presented by La. C.C. art. 2317. La. C.C. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the *852 damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. (Emphasis added.)
Mr. Klein's position must be that the incomplete metal walkway was a defective thing in the care, custody and control of the Wray defendants and that the defective walkway caused his injury. It is undisputed that Wray Enterprises was the owner of the land and partially constructed dealership at the time the injury occurred. Liability under articles 2317 and 2317.1, however, is not based on ownership, but on care, custody and control. Migliori, supra. Mr. Klein presented no evidence in opposition to the motions for summary judgment that shows that either Wray defendant had care, custody and control of the incomplete metal walkway at the time of his injury. The fact that an owner has access to the job site and even conducts periodic inspections of the work being done at the job site does not bestow care, custody and control of the job site to the owner. Id. As previously discussed, during construction of the dealership, the contractors had care, custody and control of the job site and the physical structures being built thereon. The Wray defendants alleged the absence of proof of this element of Mr. Klein's claim and Mr. Klein failed to produce any evidence that such care, custody and control of the incomplete metal walkway was vested in either Wray defendant. Accordingly, neither Wray Ford nor Wray Enterprises can be liable for his injury and are, therefore, entitled to judgment as a matter of law on the claim of strict liability. La. C.C.P. art. 966(C); Moody v. City of New Orleans, 99-0708 (La.App. 4th Cir.9/13/00), 769 So.2d 670, writ denied, 00-2809 (La.12/8/00), 776 So.2d 468.
Finally, before addressing the remaining claim of Mr. Klein, we note that we pretermit any discussion of Wray Enterprises's argument regarding possible applicability of the two-contract theory of statutory employer immunity under La. R.S. 23:1061. We need not address this issue in light of our finding that there was no duty owed by the Wray defendants to Mr. Klein. In summary, since Mr. Klein failed to sufficiently rebut the Wray defendants' well-pleaded motions for summary judgment on his claims of negligence and strict liability, Wray Ford Inc. and Wray Enterprises, LLC are entitled to judgment as a matter of law on these claims.
Negligent Hiring of Gerrald
The trial court in its ruling on the motions for summary judgment did not address the claim of the alleged negligent hiring of Gerrald by the Wray defendants and Mr. Klein made no argument on this claim in opposing the motion for summary judgment or on appeal. No evidence was presented which would establish that either Wray defendant hired Gerrald; rather, it is undisputed that Cisco-Eagle hired Gerrald. Additionally, there is no evidence to suggest that either Wray defendant had any reason to know that Gerrald would be hired as a subcontractor by Cisco-Eagle. The Wray defendants, therefore, cannot as a matter of law be liable for the alleged negligent hiring of Gerrald.

DECREE
For the foregoing reasons, the judgment of the trial court denying Wray Ford Inc.'s and Wray Enterprises, LLC's motions for summary judgment is reversed and judgment is hereby rendered in favor of Wray Ford Inc. and Wray Enterprises, LLC. Plaintiffs', Paul and Dianna Klein's, claims against Wray Ford, Inc. and Wray Enterprises, *853 LLC are dismissed. Costs are assessed to Plaintiffs, Paul and Dianna Klein.
REVERSED AND RENDERED.
NOTES
[1] Article 6 of the construction contract contemplates and provides for "construction by owner or separate contractors" and reserves the right to the owner to "perform construction or operations related to the project with the Owner's own forces...." Article 6.1.3 provides that the owner using his own forces "shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them." Article 6.1.4 states as follows:

Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12. Article 3 imposes the duty to "supervise and direct the work, using [the Owner's] best skill and attention. [The Owner] shall be solely responsible for and have control over construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the work under contract...."
Article 10.1.1 provides that "[the Owner] shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the contract." Article 10.2.3 further provides that the contractor (or owner using his own forces) erect and maintain "reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards...."
[2] Article 10.2.1 of the construction contract provides, in pertinent part, that "[t]he Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss ... to employees." Article 10.2.2 further states:

The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.
[3] Article 3.3.1 of the construction contract provides, in pertinent part, that "[t]he Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract...." Likewise, the parts storage contract lists "project management" and" installation" as part of Cisco-Eagle's responsibilities. It further states, "Cisco-Eagle, Inc. will have a project manager assigned to project throughout implementation. He will be on site during delivery of and installation of all equipment. He will be the coordinator with other contractors."
[4] We recognize that Wray Ford, Inc. was not the owner of the land or the structure being built on the land. In light of our conclusion that there was no duty owed by either entity, we have, for simplicity and brevity, referred to Wray Ford, Inc. and Wray Enterprises, LLC collectively in our treatment of this issue.