Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,667-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAVID C. MCDANIEL, JR.                    Plaintiff-Appellant

versus

R.J.'S TRANSPORTATION,                    Defendants-Appellees
L.L.C., COMSTOCK OIL & GAS-
LOUISIANA, L.L.C., BAKER
HUGHES OILFIELD
OPERATIONS, INC.

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of Desoto, Louisiana
Trial Court No. 77,122

Honorable Amy Burford-McCartney, Judge

* * * * *

H. LYN LAWRENCE, JR.                      Counsel for Appellant
ANDREW C. JACOBS

VOORHIES & LABBE                          Counsel for Appellee,
By: Cyd Sheree Page                       R.J.'s Transportation, L.L.C.

LISKOW & LEWIS                            Counsel for Appellee,
By: Paul M. Adkins                        Comstock Oil & Gas-
                                          Louisiana, L.L.C.

GALLOWAY, JOHNSON, TOMPKINS,              Counsel for Appellee,
BURR & SMITH                              Baker Hughes Oil Field
By: Timothy William Hassinger            Operations, Inc.

MELCHIODE MARKS KINGS, L.L.C.
By: Jennifer L. Simmons
    Edward S. Voelker IV

Counsel for Appellee,
Zurich American Insurance
Company

KEAN MILLER, LLP
By: Scott Louis Zimmer

Counsel for Appellee,
Chaps Oilfield Services, L.L.C.

MAX C. TUEPKER, PC
By: Max Charles Tuepker

*Pro hac vice* Counsel for
Appellee,
Chaps Oilfield Services, L.L.C.

\* \* \* \* \*

Before MOORE, THOMPSON, and BODDIE (*Pro Tempore*), JJ.

**THOMPSON, J.**

This appeal arises from the trial court's judgment granting a motion for summary judgment in favor of Comstock Oil & Gas-Louisiana, LLC. At issue in this personal injury action is the determination of independent contractor status of Chaps Oilfield Services, LLC, and whether operational control of activities at a well site were retained or exercised by Comstock Oil & Gas-Louisiana, LLC. For the reasons more fully detailed below, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a personal injury action arising from a hydrochloric acid spill at the Harrison 30-19 HC No. 1-Alt well, a DeSoto Parish natural gas well location owned and operated by Comstock Oil & Gas-Louisiana, LLC ("Comstock"). Comstock hired Chaps Oilfield Services, LLC ("Chaps"), as the on-site "company man" to be responsible for the supervision of the completion operations. Comstock and Chaps executed a Master Service Agreement (hereinafter, the "Chaps MSA"). The Chaps MSA provides that Chaps is an independent contractor free and clear of any dominion or control by Comstock in the manner in which its work is to be performed. The Chaps MSA requires Chaps to furnish its own tools, supplies, or materials, and allows Chaps to determine the manner in which its work is performed.

Comstock also hired Baker Hughes Oilfield Operations, Inc. ("Baker Hughes") to perform the ongoing fracking operations to complete the well. Baker Hughes was hired to be responsible for all aspects of the fracking

2

operation and used its own employees to conduct those operations. Comstock also executed a Master Service Agreement with Baker Hughes, the terms of which are not currently before the court.

On June 27 or 28, 2015, R.J.'s Transportation, LLC ("R.J.'s") delivered a requested tanker load of liquid hydrochloric acid to the well site. Baker Hughes ordered the acid from Univar USA, Inc., which in turn hired R.J.'s to deliver the acid to the well site. Plaintiff, David C. McDaniel, Jr. ("McDaniel"), was employed as a vacuum truck driver for Target Oilfield Services, LLC ("Target").

McDaniel alleges that the R.J.'s driver and a Baker Hughes employee were offloading the acid from the tanker into a stationary tank when a substantial amount of the liquid acid spilled, for reasons still uncertain, onto the ground. McDaniel, who was on standby at another location on the site, claims that a Baker Hughes employee directed him to the spill area in his truck. McDaniel testified that the Baker Hughes employee placed the vacuum hose some distance away, where McDaniel could not initially see or smell the acid, and instructed McDaniel to engage the vacuum mechanism. After learning that the hose was resting in acid, McDaniel shut off the vacuum mechanism.

McDaniel claims that the truck's tank valve was damaged such that the acid already vacuumed would leak out unless the truck's engine was running and the vacuum mechanism was engaged. He states that one of the Chaps company men told him that he needed to keep the vacuum mechanism engaged to prevent the acid already in his vacuum truck's tank from leaking back out on the ground. This required him to be in and around

3

his truck and in close proximity to the acid spill on site. McDaniel alleges that he inhaled the fumes from the acid from about 8:30 p.m. until nearly the end of his shift at 6:00 a.m. the following morning, during which he maintained the vacuum action as instructed by and at the insistence of the Chaps company man on location.

McDaniel claims that the inhalation of the fumes caused him serious injury and that the defendants are at fault for the injuries, due to their actions of negligently causing the acid spill, failing to warn him of the acid spill, directing him to the area of the spill without warning, instructing him to initiate the vacuum process of his truck without informing him of the nature of the spill, its composition, and directing/causing him to stay near his vehicle within the spill area causing continued exposure to the harmful fumes.

On February 2, 2016, McDaniel filed suit against R.J.'s, Comstock, and Baker Hughes. McDaniel later amended his petition to include Chaps. On October 10, 2019, Comstock filed a motion for summary judgment, in which the company argued that it was not liable for the actions of Baker Hughes or Chaps because they were independent contractors and directed the court to the existing Master Service Agreements. The trial court granted Comstock's motion for summary judgment, dismissing the company with prejudice from the proceeding. This appeal by McDaniel followed.

## PLAINTIFF'S ASSIGNMENT OF ERROR

McDaniel argues that the district court erred in granting summary judgment in favor of Comstock by finding that no genuine issue of material fact exists as to whether Chaps was an independent contractor in relation to

Comstock; and thus, Comstock was not liable for any acts or omissions of Chaps.

## SUMMARY JUDGMENT

Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action except those disallowed by law. La. C.C.P. art. 966(A)(2); *Klein v. Cisco-Eagle, Inc.*, 37,398 (La. App. 2 Cir. 09/24/03), 855 So. 2d 844. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3). The burden of proof rests with the mover; however, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 (D)(2). Mere speculation is not sufficient. *Klein*, *supra*.

Review of a grant or denial of a motion for summary judgment is de novo. *Lawrence v. Sanders*, 49,966 (La. App. 2 Cir. 06/24/15), 169 So. 3d 790, *writ denied*, 15-1450 (La. 10/23/15), 179 So. 3d 601.

## DISCUSSION

This case involves the relationship between Comstock, the owner and operator of a well site, and Chaps, its "company man," whose job entailed supervising the work on the site. It was Chaps' employee at the well site when the events unfolded that resulted in the alleged injuries to McDaniel. McDaniel alleges that Chaps was not an independent contractor, and thus,

5

Comstock should be liable for the Chaps' employees' actions on the day of his accident, which resulted in his injuries.

This court is aware of the risk of the potential for a troubling cramdown of overly broad indemnifications from liability which can result from master service agreements that are not the product of equal bargaining positions. However, Louisiana law is clear that a principal is generally not liable for the offenses of an independent contractor. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034, 108 S. Ct. 1593 (1988). Louisiana courts have identified a number of relevant factors in determining whether the relationship of principal and independent contractor exists, including the existence of a contract for performance of a specific job, payment of a fixed price for the work, employment by the contractor of assistants who are under his control, the furnishing of necessary tools and materials by the contractor, and his right to control the conduct of his work while in progress. *Davenport v. Amax Nickel, Inc.*, 569 So. 2d 23 (La. App. 4 Cir. 1990), *writ denied* 90-2426 (La. 01/04/91), 572 So. 2d 68. It is not the supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists. *White v. Shell Expl. & Prod. Co.*, 06-677 (La. App. 5 Cir. 01/30/07), 951 So. 2d 1208, 1211, *writ denied* 07-0407 (La. 04/20/07), 954 So. 2d 164.

In this instance, the record is clear that the Chaps MSA governed the relationship between the two parties, and it is undisputed that the contract explicitly states that Chaps was an independent contractor. The contract also explicitly states that Chaps would furnish necessary tools, supplies, or

6

materials to perform the work. Finally, although the Chaps MSA does not describe the specific site or general duties for Chaps or state a fixed price for the work to be performed, the MSA includes the following language:

> [The] Agreement shall control and govern all work performed or to be performed by [Chaps] for [Comstock] under verbal or written work orders, purchase orders, delivery tickets, invoices or other verbal or written agreements between the Parties, relating to work to be done by [Chaps] for [Comstock]

Courts applying Louisiana law have recognized that an ongoing contractual relationship between parties can still create a principal/independent contractor relationship. *See Namer v. Hall*, 06-10698, (E.D. La. 3/25/08), 2008 WL 819397; *White*, *supra*. The Chaps MSA plainly provides that additional work orders, both verbal and written, will be provided between the parties under the contractual umbrella of the MSA. Considering the above, we find that Comstock has presented undisputed evidence that Chaps was an independent contractor for which Comstock was not liable.

Having determined there exists an independent contractor relationship, we must now explore the two exceptions to the general rule that principals are not liable for independent contractors. The first occurs when the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal. The second exception occurs when the principal retains "operational control" over the contractor's work or expressly or impliedly approves the unsafe work practices that lead to an injury. *Klein*, *supra*. McDaniel alleges that there is a genuine issue of material fact as to whether Comstock retained operational control over Chaps at the well site.

In order to determine whether a principal has retained operational control, a court must first analyze whether, and to what extent, the principal

7

contractually reserved the right to control the work. *Klein*, *supra*; *Ainsworth*, *supra*. Actual control is also relevant to the operational control exception, but the supervision and control that is actually exercised by the principal is less significant than the contractual reservation of the right to control by the principal. *Ainsworth*, *supra*.

The provisions of the Chaps MSA establish Comstock specifically relinquished all contractual control over the work to be performed by Chaps. The Chaps MSA provides:

> §8. **Independent Contractor.** In the performance of the services hereunder, [Chaps] agrees that it shall act as and be an Independent Contractor free and clear of any dominion or control by [Comstock] in the manner in which said services are to be performed, and as such [Chaps]:
> a. acts as the employer of any employee of the [Chaps] by paying wages, directing activities, performing other similar functions characteristic of an employer-employee relationship;
> b. is free to determine the manner in which the work or service is performed, including the hours of labor or method of payment to any employee;
> c. is required to furnish or have his employees, if any, furnish necessary tools, supplies, or materials to perform the work or service;
> d. possess the skills required for the specific work or service;
> e. agrees to file all required tax reports and pay all income taxes due on payments to [Chaps] hereunder;
> f. agrees that neither [Chaps] nor [Chaps'] employees, agents or subcontractors will be covered by [Comstock's] Workers Compensation.

"When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control." *Klein*, 855 So. 2d at 850 (*quoting Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161, 124 S. Ct. 117 (2004)). The unambiguous language of the Chaps MSA refers to Chaps as an "independent contractor" and establishes the principal/independent

8

contractor relationship. There is no evidence in this record that Comstock contractually reserved the right to control the work.

We must next determine whether Comstock retained any *actual* operational control over Chaps. A principal is entitled to maintain supervisory control over a project done by an independent contractor to ensure that it complies with the contract. *Nippa v. Chevron, USA*, 99-2953 (La. App. 4 Cir. 11/15/00), 774 So. 2d 310, 314, *writ denied*, 2000-3420 (La. 02/09/01), 785 So. 2d 823. However, the status of an independent contractor can be in doubt when the principal exercises operational control over a project. *Id.*

The origin of the term "operational control" in Louisiana jurisprudence can be traced back to the Restatement (Second) of Torts (1965), in which the comment to §414 provides:

> In order for the rule stated in this section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Grammer v. Patterson Services, Inc.*, 860 F.2d 639 (5th Cir. 1988), *cert. denied* 491 U.S. 906, 109 S. Ct. 3190 (1989)(*quoting* Restatement (Second) of Torts (1965)). Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *Klein*,

*supra*. A federal court applying Louisiana law defined "step-by-step process" as a case where a principal substitutes the independent contractor's entire method and manner of operation for one of its own. *Romero v. Mobil Expl.*, 727 F. Supp. 293 (W.D. La. 1989), *aff'd* 939 F.2d 307 (5th Cir. 1991). Operational control is the retention of right of supervision in such a way that the contractor is not entirely free to do the work in his own way. *Skinner v. Schlumberger Technology Corp.*, 13-03146, (W.D. La. July 13, 2015), 2015 WL 4253986. Specifically, "for purposes of determining operational control, the relevant inquiry becomes whether [the defendant] had control over the operation of the particular activity during which the plaintiff was injured." *Robertson v. Arco Oil & Gas Co.*, 948 F.2d 132, 133 (5th Cir. 1991).

McDaniel directs the Court to the affidavit of Dan Harrison, Comstock's Chief Operating Officer, who testified that:

> Comstock would consult with Chaps personnel regarding the operations at the well site and Comstock would identify and provide specifications for each operation. Comstock consulted with Chaps employees regularly and would discuss issues and problems as they arose.

McDaniel also directs the court to the deposition of Preston Poole, a Chaps employee, who testified that he could order the operation to shut down if directed to do so by Comstock, but he did not otherwise supervise Baker Hughes' operations. Finally, McDaniel cites the testimony of Comstock environmental specialist Keith Lorenz, who stated that he was called after the acid spill by a Chaps employee. Lorenz testified that he was one of the employees who is required to be notified when a spill has occurred so that he can alert the proper authorities in accordance with Comstock's spill plan,

10

which remained in the possession of Comstock employees. Lorenz testified that in the present matter, he notified the proper authorities and then visited the site several days after the acid spill occurred. McDaniel argues this testimony creates a genuine issue of fact as to whether Comstock had operational control over Chaps. We disagree under these specific facts.

In *Fruge*, *supra*, the court affirmed a summary judgment in favor of the principal when the representative was present on the project site 24 hours a day, but there was no evidence of direct supervision or control. The court in *Klein* found that there was no operational control when the principal visited the site several times a week and made suggestions regarding the completion of the project. The *Klein* court held that mere suggestions or instructions to an independent contractor does not equate to control over the methods or details of a contractor's work. *Klein*, *supra* at 851. The United States Fifth Circuit, applying Louisiana law, found that there was no operational control when the principal reserved the right to monitor the contractor's performance, stationed a "company man" on the platform to observe the contractor's activities, and the contractor was obligated to report unsafe work practices or conditions to the principal. *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).

Considering the above jurisprudence, we cannot find that the testimony cited by McDaniel rises to such a level as to create a genuine issue of fact as to whether Comstock retained operational control over Chaps. The record reflects that Comstock did not have any employees at the well site on the day of McDaniel's accident. While Comstock had regular consultations with Chaps, there is no evidence that Comstock substituted its method or

11

manner of operation for that of Chaps. There is also no evidence that Comstock had any control over the particular activity that caused McDaniel's injury, *i.e.* the vacuuming of hydrochloric acid. Comstock's environmental specialist notified authorities about the acid spill but did not direct the clean-up and only visited the site several days after the spill occurred. The relationships between Comstock and Chaps in the present matter is one of supervisory control, rather than operational control. Supervisory control does not negate the principal/independent contractor relationship. As such, the granting of the motion for summary judgment under these specific circumstances was proper.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED.**

12